UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIKERSON MENTOR,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>ANDRE MATEVOUSIAN,<br><br>　　　　Respondent. | Case No.: 1:16-cv-00220-DAD—JLT<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS (Doc. 11)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY-ONE DAYS |

In this action, Mr. Mentor contends that the manner in which the sentencing judge imposed the order of restitution and a special assessment constituted as "improper delegation of authority to the BOP or probations," pursuant to the Ninth Circuit's directive in Ward v. Chavez, 678 F.3d 1042 (9th Cir. 2012). (Doc. 1, p. 6). Petitioner contends that it was the sentencing court's obligation to set a payment schedule for the Special Assessment and restitution and its failure to do so was a violation of Petitioner's Fifth Amendment right to due process. (Id.). Because Mr. Mentor failed to exhaust the grievance procedure and because he fails to demonstrate he is entitled to relief, the Court recommends the petition be **DENIED**.

I.     DISCUSSION

　　A.  Jurisdiction.

A federal court may not entertain an action over which it has no jurisdiction. Hernandez v. Campbell, 204 F.3d 861, 865 (9th Cir. 2000). A federal prisoner challenging the manner, location, or

conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998); United States v. Tubwell, 37 F.3d 175, 177 (5th Cir. 1994); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991);  Barden v. Keohane, 921 F.2d 476, 478-79 (3rd Cir. 1991);  United States v. Hutchings, 835 F.2d 185, 186-87 (8th Cir. 1987); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

Petitioner is challenging the manner in which the order of restitution and payment of a Special Assessment is being executed by the BOP.  Accordingly, Petitioner is challenging the manner, location or conditions of his sentence and, thus, proceeding under § 2241 is appropriate and the Court has jurisdiction to proceed.

B.  Exhaustion.

It is well settled that federal prisoners must generally exhaust their federal administrative remedies prior to filing a habeas corpus petition pursuant to 28 U.S.C. § 2241.  See Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir.1986) (per curiam) ("Federal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court."); see also Huang v. Ashcroft, 390 F.3d 1118, 1123 (9th Cir.2004); Fendler v. U.S. Parole Comm'n, 774 F.2d 975, 979 (9th Cir.1985).

While the exhaustion requirement is not jurisdictional, its importance is well established.  See Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990), *overruled on other grounds*, Reno v. Koray, 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995); see also Singh v. Napolitano, 649 F.3d 899, 900 (9th Cir.2011) (per curiam) (as amended) ("In order to seek habeas relief under section 2241 ... a petitioner must first, 'as a prudential matter,' exhaust his or her available administrative remedies.") (citation omitted); Castro–Cortez v. Immigration & Naturalization Serv., 239 F.3d 1037, 1047 (9th Cir.2001) ("[S]ection [2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.  However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.") (footnote omitted), *abrogated on other grounds*, Fernandez–Vargas v. Gonzales, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006).

Requiring a petitioner to exhaust his administrative remedies aids "judicial review by allowing the appropriate development of a factual record in an expert forum." See Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir.1983) (per curiam). Use of available administrative remedies conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level." Id. Moreover, it allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." Id.

Courts have discretion to waive the exhaustion requirement where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir.2004) (citation omitted); see also Acevedo–Carranza v. Ashcroft, 371 F.3d 539, 542 n. 3 (9th Cir.2004). A "key consideration" in exercising such discretion is whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme." Laing, 370 F.3d at 1000 (quoting Montes v. Thornburgh, 919 F.2d 531, 537 (9th Cir.1990)).

The United States provides an administrative remedy process through which BOP inmates may seek formal review of an issue relating to any aspect of their confinement. See 28 C.F.R. § 542.10. In order to exhaust available administrative remedies within this system, an inmate must proceed through four levels of review.

First, "before an inmate submits a Request for Administrative Remedy," the inmate must attempt to "informally resolve" the issue at the institution where it occurred by presenting the issue to staff on the required form. See 28 C.F.R. § 542.13(a). If the issue cannot be informally resolved within 20 calendar days from the date of the occurrence, the inmate may submit a formal written Administrative Remedy Request on the required form, commonly known as a BP–9, to the staff member designated to receive these requests. See 28 C.F.R. § 542.14(a). The Warden has 20 calendar days to respond to the BP–9, although this time period may be extended once by 20 days with written notice to the inmate. See 28 C.F.R. § 542.18.

If the inmate is not satisfied with the Warden's response, he may proceed to the third level of administrative review by appealing the matter to the Regional Director of the region in which the inmate is confined within 20 calendar days from the date the Warden signed the response to the BP–9.

See 28 C.F.R. § 542.15(a). The required form for this appeal is commonly referred to as a BP–10. See 28 C.F.R. § 542.15(b). Once the inmate files the BP–10, the Regional Director has 30 calendar days to respond to the appeal, although this time period may be extended once by 30 days with written notice to the inmate. See 28 C.F.R. § 542.18.

Respondent has submitted documentary evidence that Petitioner filed only one administrative appeal, at the lowest level, and that appeal concerned "SHU matters/incident report," not the issues raised in the instant petition. (Doc. 11, Declaration of Jennifer Vickers ("Vickers Dec."), ¶ 9).

As Respondent correctly points out, the Court may excuse non-exhaustion if it would be futile.[1] However, as the Vickers Declaration explains, in response to Ward, the BOP's Western Regional Counsel issued an April 2013 notice to all inmates housed in institutions within the Ninth Circuit detailing how inmates could obtain administrative review of their restitution orders to determine whether those orders were valid under Ward. (Vickers Dec., ¶ 12). Thus, post-Ward, Respondent changed its administrative appeal procedures expressly to accommodate review of the very issue raised in this petition. Under such circumstances, Petitioner cannot credibly contend exhausting his administrative review procedures would have been futile. This is consistent with the position taken by many federal district courts since the BOP's post-Ward changes. See, e.g., Hinojosa v. Shartle, 2015 WL 3823791, at *4 (D. Ariz. June 19, 2015); Klyana v. Apker, 2015 WL 8714654, at *4 (E.D. Cal. Dec. 15, 2015); Quinonez v. McGrew, 2014 WL 7014091, at *4 (C.D. Cal. Oct. 23, 2014); Robinson v. Sanders, 2013 WL 4832718, at *5 (C.D. Cal. Sept. 6, 2013). Petitioner's failure to initiate at any level an administrative review of the issues raised herein requires dismissal under the exhaustion doctrine.

C. Validity of Petitioner's Restitution Order.

However, even were the foregoing not true, Petitioner's claim would fail on its merits. Petitioner challenges BOP's authority to remove funds from his trust account pursuant to the Inmate Financial Responsibility Program ("IFRP") where the sentencing court specified the amount of repayment but failed to "specify a payment schedule." (Doc. 1, p. 7). Petitioner goes on to contend that the BOP "drafted their own Inmate Financial Responsibility Program payment schedule and forced

---

[1] The petition raises futility as a basis for non-exhaustion. (Doc. 1, p. 3).

4

[Petitioner] to sign or be placed under restriction." (Id.).  For the reasons below, the Court agrees with Respondent that the sentencing court's order is valid and, thus, the BOP has the authority to remove the specified amounts from Petitioner's prison trust fund.

### 1. Factual Background

As Petitioner's sentencing, the district judge imposed a $1400 Special Assessment and restitution in the amount of $201,535.11.  (Vickers Dec., ¶ 5; Attach. 2, p. 5).  The district court's order expressly provided as follows:

> It is further ordered that the defendant shall pay restitution in the amount of $201,535.11. During the period of incarceration, payment shall be made as follows: (1) if the defendant earns wages in a Federal Prison Industries (UNICOR) job, then the defendant must pay 50% of wages earned toward the financial obligations imposed by this Judgment in a Criminal Case; (2) if the defendant does not work in a UNICOR job, then the defendant must pay $25.00 per quarter toward the financial obligations imposed in this order.
>
> Upon release of incarceration, the defendant shall pay restitution at the rate of 10% of monthly gross earnings, until such time as the court may alter that payment schedule in the interests of justice.  The U.S. Bureau of Prisons, U.S. Probation Office and U.S. Attorney's Office shall monitor the payment of restitution and report to the court any material change in the defendant's ability to pay.  These payments do not preclude the government from using other assets or income of the defendant to satisfy the restitution obligations.

(Attach. 2, p. 5).  Additionally, the district court provided that, "having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due" in a "lump sum payment of $1,400.00," which was "due immediately."  (Id., p. 7).

The documents lodged with the motion to dismiss establish that Petitioner originally agreed to participate in the IFRP from September 6, 2013 through September 9, 2014, but then refused to participate in the program until March 11, 2015.  (Vickers Dec., ¶ 13).  Following March 11, 2015, Petitioner agreed to participate in the program again.  (Id.).  While participating, Petitioner made four $25 payments quarterly, one each on December 10, 2013, March 10, 2014, June 10, 2014, and June 10, 2015.  (Id., ¶ 5).  The $100 Petitioner has paid went entirely to the Special Assessment, which now stands at $1,300.  Nothing has been paid toward the restitution amount of $201,535.11.  (Id., ¶ 14).

### 2. The IFRP

The BOP's IFRP applies to nearly all post-trial inmates in federal facilities and is meant to encourage inmates to meet their "legitimate financial obligations." See 28 C.F.R. § 545.10; United States v. Lemoine, 546 F.3d 1042, 1046 (9th Cir.2008).  Under the IFRP, unit staff develops a

financial plan for each inmate and monitor his or her progress in adhering to that plan. See 28 C.F.R. §§ 545.10, 545.11; Lemoine, 546 F.3d at 1047.  The IFRP is a voluntary program and inmates are free to decline to participate in the IFRP, but the failure either to participate in or to comply with a financial plan created pursuant to the program carries consequences, such as denials of or limitations on furloughs, pay, work detail, commissary spending, housing status, and placement in community-based programs. See 28 C.F.R. § 545.11(d); Lemoine, 546 F.3d at 1047.  In Lemoine, 546 F.3d at 1049, the Ninth Circuit held that such consequences are reasonably related to the legitimate penological interest of rehabilitation and do not constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that they invoke any constitutionally protected liberty interest.

### 3. The MVRA

The Mandatory Victim's Restitution Act of 1996 ("MVRA") provides in pertinent part as follows:

> (f) (1)(A) In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.
>
> (B) In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution.
>
> (2) Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—
>
> > (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
> >
> > (B) projected earnings and other income of the defendant; and
> >
> > (C) any financial obligations of the defendant; including obligations to dependents.

18 U.S.C. § 3664(f)(1)-(2). The statute has been construed to require the sentencing court itself to specify the manner in which, and the schedule according to which, the restitution is to be paid; the court's duty to set a schedule for the payment of restitution is non-delegable. United States v. Gunning (Gunning I ), 339 F.3d 948, 949 (9th Cir.2003) (holding that a district court's order making restitution payable "immediately," with any amount unpaid after the defendant's release "to be paid during the

period of supervision as directed by a U.S. probation officer," assigned full control of subsequent payment to the probation office and thus constituted an impermissible delegation of the court's authority to the probation officer); United States v. Gunning (Gunning II), 401 F.3d 1145, 1149 (9th Cir.2005) (holding that the district court's order directing the payment of restitution "immediately," to be paid through the BOP's IFRP program during the time that the defendant was imprisoned, and to be paid in monthly installments of not less than ten percent of the defendant's gross income commencing thirty days after release from imprisonment, constituted an impermissible delegation of authority because there was no adequate provision for payment during the period of imprisonment between the petitioner's sentencing and the petitioner's supervised release). Pursuant to this line of cases, a district court's order that restitution is due or be paid "immediately," made with an expectation that the BOP or probation will work out the details of payment over time, constitutes an impermissible delegation of authority. Ward, 678 F.3d at 1047–48.

An order to pay restitution immediately may be permissible if it involves no delegation of the scheduling of payment, such as where the court determines that the defendant has the financial ability to pay the restitution in full immediately. However, a sentencing court has a duty to consider the defendant's financial position in determining a restitution payment schedule. 18 U.S.C. § 3664(f)(2); United States v. Martin, 278 F.3d 988, 1006 (9th Cir.2002); Ward, 678 F.3d at 1048–49. The statute governing the mode of payment of restitution provides, "A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572(d).

Where a district court determines that the defendant's financial resources are such that periodic payments are unwarranted, then it is appropriate for a district court to order payment immediately; in such circumstances, no improper delegation occurs. Ward, 678 F.3d at 1049–50; United States v. Martin, 278 F.3d at 1006 (holding it was correct to order immediate payment where the district court had before it information concerning the defendant's financial resources that it presumably considered and found insufficient to warrant periodic payments). In contrast, where the defendant has insufficient financial resources to make immediate repayment, then the district court, as distinct from the BOP or probation, must set a repayment schedule in the judgment of conviction in order to discharge its duties

under the MVRA. <u>Ward</u>, 678 F.3d at 1049.  Where a court orders immediate payment without considering the defendant's ability to pay, the restitution order is likewise insufficient because of a failure to set forth a schedule. <u>Id</u>.  The court in <u>Ward</u> summarized the authorities as follows:

> For a restitution order to be lawful, therefore, § 3664 requires that the district court set a schedule in consideration of the defendant's financial resources. If the court considers the defendant's financial resources and concludes that periodic payments are unwarranted "in the interest of justice," the order is lawful, as we concluded in <u>Martin</u>. If, however, the district court simply orders immediate repayment and leaves it to another agency, like the BOP, to actually set the payment schedule that the statute obligates the court to determine, that order is unlawful, as the district court has abdicated in its duty to set the schedule "in consideration of" the financial circumstances of the defendant.

<u>Ward</u>, 678 F.3d at 1050.  Hence, the BOP "lacks the authority to collect restitution payments through the IFRP" when the criminal judgment does not include such a schedule.  <u>Id</u>. at 1051.

          4.  <u>Analysis</u>.

The gravamen of Petitioner's claim is that the 2013 sentencing order, including the order regarding the Special Assessment and restitution, does not satisfy <u>Ward</u>'s requirement for a payment "schedule" that would constitute a proper delegation of authority from the trial court to the BOP. This contention is entirely without merit.

The sentencing order is far different from the one the Ninth Circuit struck in <u>Ward</u>. In that case, the sentencing judge ordered the defendant to pay a $1,000 Special Assessment and $27,885 in restitution.  <u>Ward</u>, 578 F.3d at 1044.  In the "Schedule of Payments" portion of the judgment, the judge stated only that both the Special Assessment and the restitution amount were due and payable "immediately."  <u>Id</u>.  As discussed above, the Ninth Circuit ruled that where the sentencing order provides only that restitution is due or is to be paid "immediately," without more specific details about the manner of payment and with an expectation that the BOP or probation will work out those payment details at some future date, such an order constitutes an impermissible delegation of authority. <u>Ward</u>, 678 F.3d at 1047–48.

Contrary to the situation in <u>Ward</u>, the sentencing judge here went to great effort to specify a payment schedule that took into account whether Petitioner was working in a UNICOR job or not.  If he had such a job, then payments of 50% of his wages were to be made; if not, then $25 per quarter would be deducted from his trust account.  This is precisely the type of specific payment schedule that

Ward envisioned and that has been upheld by other Court's in this circuit following Ward.  See, e.g., Modaffari v. McGrew, 2014 WL 1715527, at *4 (C.D. Cal. Apr. 30, 2014); Valentine v. Copenhaver, 2015 WL 5352902, at *7 (E.D. Cal. Sept. 14, 2015).

As Respondent correctly observes, the sentencing court's order was specific enough to satisfy Ward but also flexible enough to accommodate changes in Petitioner's financial situation.  The fact that the court ordered a percentage-of-wages payment for a UNICOR job was consistent with the higher paying scale for those types of jobs, while imposing a flat $25 per quarter payment for non-UNICOR jobs took into account the lesser amount Petitioner would likely earn in such employment.

Moreover, as this Court recognized in upholding a similar sentencing order in Valentine, sentencing courts must craft the payment schedule with sufficient flexibility to accommodate changes in Petitioner's situation that will inevitably occur over time:

> The court expressly stated that payments were to be deducted in the amount of one-quarter of each payment to Petitioner.  Obviously, the sentencing court would not know to which institution Petitioner was to be sent by the BOP, nor would the sentencing judge have knowledge of the specific inmate payment procedures in effect at the prison where Petitioner would eventually be incarcerated.  Moreover, inmates are frequently moved to various BOP facilities, each of which may have different payment schedules depending on specific BOP policies in effect at those facilities.  Inmates at one facility may be paid weekly, others biweekly, others monthly.  If the sentencing order had indicated a specific frequency for deductions, e.g., each week, and the inmate were only paid monthly at that facility, it takes little imagination to envision the logistical problems this would pose for the BOP.

Valentine, supra, at *7.

A fair reading of the sentencing order in this case confirms that this type of flexibility is precisely what the district judge was attempting to accomplish.  Using Petitioner's logic, it would be difficult to see how a sentencing judge could craft a valid restitution order short of creating a lengthy and highly detailed payment schedule for each criminal defendant, a task entirely unrealistic given today's high caseloads.  There is simply no indication that such an onerous responsibility is what the Ninth Circuit had in mind when it decided Ward, and this Court rejects such an unrealistic approach.  As written, the sentencing order in this case complies with the requirements of Ward.

Moreover, to the extent that the petition can be construed to assert a claim that he is being "forced" to participate in the IFRP, such a claim is foreclosed by Ninth Circuit precedent.  It is well-established in this circuit that the BOP may use "incentives" to "encourage" participation by inmates in

the IFRP without implicating the inmate's constitutional rights.  Lemoine, 546 F.3d at 1049; see Vondette v. Ives, 2014 WL 657877, at *9 (C.D. Cal. Feb. 18, 2014).  Indeed, the record discloses that Petitioner has opted in and opted out of the IFRP on several occasions, thereby contradicting his assertion that he was "forced" to participate.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that Respondent's motion to dismiss (Doc. 11) be granted and the petition be **DISMISSED**.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  **Within 21 days** after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within 10 days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 30, 2016**                                   **/s/ Jennifer L. Thurston**
                                                                        UNITED STATES MAGISTRATE JUDGE